UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

JOSE MIGUEL VAZQUEZ,               )
                                   )
     Plaintiff,                   )
                                   )
v.                                 )          CAUSE NO. 2:09-CV-434 JD
                                   )
NAVISTAR INTERNATIONAL             )
TRANSPORTATION,                    )
                                   )
     Defendant.                   )

## OPINION AND ORDER

On March 24, 2010, plaintiff Jose Miguel Vazquez filed an amended complaint [DE 19]

alleging that defendant Navistar, Inc. ("Navistar"): (1) discriminated against him on account of his

Hispanic ethnicity in violation of 42 U.S.C. § 1981; (2) discriminated against him on account of his

Hispanic ethnicity in violation of Title VII of the Civil Rights Act; (3) retaliated against him in

violation of 42 U.S.C. § 1981; (4) violated the Fair Labor Standards Act; and (5) violated Indiana's

wage claims statute, I.C. 22-2-5 *et seq*. On May 16, 2011, Navistar  moved for summary judgment

against the plaintiff on all claims. [DE 44]. On June 15, 2011, Vazquez responded [DE 49], and on

June 29, 2011, Navistar replied. [DE 50; DE 51]. On July 5, 2011, Vazquez moved for summary

judgment against Navistar on his Fair Labor Standards and Indiana Wage Claim allegations. [DE

52; DE 53]. On August 2, 2011, Navistar responded [DE 54], and Vazquez never replied. Both

parties' motions for summary judgment are ready for a ruling.

## FACTUAL BACKGROUND

Navistar, based in Warrenville, Illinois, produces commercial trucks, mid-range diesel

engines, IC brand school buses and Workhorse brand chassis for motor homes and stop vans. [DE

45-1 at 2]. Jose Miguel Vazquez, an Hispanic male, worked as a Level 5 Supplier Quality

Development Engineer for Navistar from January 2003 until November 18, 2008. [DE 45-1 at 6]. He was formally stationed at Navistar's Indianapolis engine plant, which produced diesel engines for the Ford Motor Company. [DE 45-1 at 6]. Vazquez worked in Navistar's Quality Control Central Quality Department, and his duties included traveling to various suppliers and verifying that those suppliers were delivering commodities that met Navistar's expectations. [DE 45-1 at 15]. He was tasked with ensuring that the suppliers were adhering to the terms of their respective contracts – which were significant, multi-million dollar contracts – and he operated largely under his own discretion. [DE 45-1 at 15-16]. Vazquez would compile reports on supplier activity and convey them to his superiors for review, but he exercised independent discretion "all the time." [DE 45-1 at 16].

While employed at Navistar, Vazquez was compensated as an exempt, salaried employee. He was paid bi-weekly and at the time of his termination he was receiving $2,594.12 per paycheck. [DE 45-1 at 2]. He received the same amount in salary regardless of the hours worked in a given pay period, and his salary was paid on a "current" basis, meaning the check he received at the end of a pay period corresponded to work done during that same pay period. [DE 45-1 at 2-3]. Despite this arrangement, Vazquez was also entitled to overtime pay, by the hour, for all hours worked beyond 45 in a given week. [DE 45-1 at 18]. Overtime pay was not paid on a current basis. It was paid on an arrears basis, meaning that overtime pay included in a check issued at the end of a given pay period corresponded to overtime work done during the previous pay period. [DE 45-1 at 2-3]. There was also a second sort of additional-time structure: "comp time." As Vazquez describes it, comp time, unlike overtime, was not specifically compensated over and above his salary, but an employee was entitled to make up for it with additional time off in the future. [DE 45-1 at 18].

2

In order to keep track of the various time and compensation structures, Navistar's Corporate Compensation Department issued a new policy via email on January 9, 2008, indicating that exempt employees, like Vazquez, were required to use electronic start and stop time sheets. [DE 45-1 at 30, 66-73; DE 45-1 at 6]. A training manual and a link to the time sheet program were sent in an additional email. [DE 45-1 at 6]. But Vazquez has no recollection of reading that email, or of learning of that policy, and suspects it may have been blocked by a spam filter. [DE 45-1 at 30-31]. He continued to enter his time into the system as total hours worked, using a "2-4-7" code. [DE 45-1 at 30]. The end result was that Vazquez began to receive paychecks compensating him with an hourly wage of $32.465 for every hour that he worked – not just overtime – in addition to his regular salary. [DE 45-1 at 7]. On November 6, 2008, Navistar became aware that Vazquez was incorrectly coding his time, and calculated that he had been overpaid in the preceding months by $48,570.06 gross. [DE 45-1 at 7]. Vazquez had never reported the discrepancy. [DE 45-1 at 7]. After learning of Vazquez's failure to notify his superiors of the overpayments, Navistar decided to terminate Vazquez as an employee on November 18, 2008. [DE 45-1 at 7]. Vazquez now contends that his termination was motivated by a discriminatory animus, although he admits that he was overpaid by $20,000-$22,000 as a result of the timekeeping discrepancy during the course of 2008. [DE 45-1 at 27-28].

### Final Paychecks

Part of the controversy in this lawsuit is over whether or not Vazquez received all the pay to which he was entitled when he parted ways with Navistar on November 18, 2008. Vazquez received a paycheck on October 17, 2008, that included his salary for hours worked from October 6, 2008, through October 19, 2008, and his compensation for overtime worked during the September

3

22, 2008, through October 5, 2008, pay period. [DE 45-1 at 3]. He also received a paycheck on October 31, 2008, that included his salary for hours worked from October 20, 2008, through November 2, 2008, and compensation for overtime worked during the October 6, 2008, through October 19, 2008, pay periods. [DE 45-1 at 3]. But on November 14, 2008, Vazquez received a paycheck for $0. Navistar attributes this to an accounting error, and it reissued a paycheck on November 19, 2008, including Vazquez's salary for hours worked from November 3, 2008, through November 18, 2008. [DE 45-1 at 3]. Although his brief on summary judgment disputes it [DE 49-2 at 3], Vazquez acknowledges that he received the reissued paycheck after disputing the zeroed out one with Human Resources. [DE 45-1 at 37]. Vazquez does claim he never received a check for the days he worked between the conclusion of the final pay period and the date of termination, but it is uncontested that he was terminated on the final day of the pay period ending on November 18, 2008, and was compensated for that pay period.

### Internal Complaints and Allegations of Disparate Treatment

Vazquez complained internally about discriminatory treatment at Navistar on two occasions in 2005, roughly three years prior to his termination. First, at a class presented by Human Resources on Navistar's Code of Conduct and Anti-Harassment Policy sometime in 2005, Vazquez complained that he felt the policies were excessively specific and supervisors were able to get around them. [DE 45-1 at 19]. Second, over the 2005-2006 holiday season, Vazquez felt he was being forced to work through the holidays – and to instruct his suppliers to work through the holidays – because he was Hispanic, and non-Hispanic members of his group were not being treated the same way. [DE 45-1 at 19-20]. Vazquez complained about this in a voice mail to a corporate director named Steve Zike,

4

and shortly thereafter the Director of Vazquez's unit was let go. [DE 45-1 at 20]. Vazquez felt the remedy was insufficient, because he was still required to work that holiday season. [DE 45-1 at 20].

Vazquez also feels he was subjected to instances of discrimination beyond the two situations about which he internally complained. He was occasionally sent to Mexico to follow up on Navistar suppliers' quality engineering work being done there, because Navistar trusted Vazquez more than the quality engineers working in Mexico. [DE 45-1 at 21]. He was sometimes asked to translate conversations with Spanish-speaking suppliers, because Vazquez was the only one present who spoke Spanish and English. [DE 45-1 at 21]. And one of his supervisors, a Steve Branson, would sometimes make racial slurs at meetings, such as calling Hispanics "wetbacks" or "spics", calling Italians "greaseballs", and making derogatory comments about German and Asian individuals. [DE 45-1 at 21]. Vazquez never made any other harassment complaints, however, because he was worried that "three strikes" would be bad for him. [DE 45-1 at 20].

### EEOC Complaint and Procedural History

On September 21, 2009, Vazquez filed a charge of discrimination with the Michigan City Human Rights Commission alleging that he was terminated because of his race. [DE 1 at 7]. The charge was forwarded to the EEOC for processing. [DE 1 at 6]. On September 30, 2009, the EEOC dismissed Vazquez's charge because it was not timely filed, and gave Vazquez his notice of right to sue. [DE 1 at 8]. On December 30, 2009 – cutting the 90 day filing requirement very close – Vazquez filed his complaint in the court, later superseded by the amended complaint currently under attack on summary judgment. In its motion for summary judgment, Navistar argues, first, that Vazquez's Title VII claims are time-barred; second, that Vazquez has not made out a prima facie case for discrimination under either Title VII or 42 U.S.C. §1981; and, third, that he has been paid

5

all wages to which he is entitled, so the FLSA and Indiana Wage Claims Act counts fail as a matter of law. In Vazquez's motion for summary judgment, he argues that he is entitled to judgment as a matter of law on the FLSA and Wage Claims issues. The court now addresses these arguments sequentially.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. On the other hand, where a factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences her favor. *Anderson*, 477 U.S. at 255; *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). The fact that the parties have cross-filed for summary judgment does not change the standard of review. *M.O. v. Indiana Dep't of Educ.*, 635 F.Supp.2d 847, 850 (N.D. Ind. 2009). Cross-motions are typically analyzed separately under the standards applicable to each.

6

*McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 n. 4 (7th Cir. 2008). The non-moving party cannot simply rest on the allegations or denials contained in its pleadings. It must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Furthermore, the non-moving party may rely only on admissible evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

## DISCUSSION

The court considers Navistar's motion for summary judgment first. The court grants the motion for summary judgment against the complaint in its entirety. However, having decided all of the federal claims in this case, the court declines to exercise supplemental jurisdiction over Navistar's counterclaim, and dismisses the counterclaim without prejudice. Due to the disposition of Navistar's motion for summary judgment, Vazquez's cross-motion for summary judgment is denied.

## I.   Vazquez's Title VII Claims are Barred by the Statute of Limitations.

Indiana is a "deferral state," meaning it has state agencies with enforcement powers parallel to those of the EEOC, as evidenced by the Michigan City Human Rights Commission's handling of the plaintiff's initial complaint in this case. Thus, Vazquez had 300 days from the date of his termination to file a charge alleging a Title VII violation. *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009); *see also* 29 C.F.R. § 1601.80.[1] Vazquez was terminated on November

---

[1] The court notes that our circuit's case law on the Title VII filing deadline for Indiana is, to some extent, in conflict. *See, e.g., Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 836 (7th Cir. 2008) ("[An EEOC] charge must be filed within 300 days after the alleged unlawful employment practice occurred or else the employee may not challenge the practice in court"); *but see Williamson v. Indiana Univ.*, 345 F.3d 459, 463 (7th Cir. 2003) ("A claimant may file a charge of discrimination with the EEOC within a 180-day window permitted under Title VII"). But the distinction makes no difference in this case; 307 days is too long under either rule.

18, 2008, and filed his EEOC charge on September 21, 2009, 307 days later. The EEOC dismissed the Title VII claim because it was untimely, and the same is true in this court. Vazquez did not even address Navistar's statute of limitations argument in his response brief, perhaps implicitly conceding that the argument is a sound one. Summary judgment against the plaintiff's Title VII claims must be **GRANTED**.

## II.    Vazquez Has Failed to Carry His Burden with Respect to His Claims of Discrimination Under 42 U.S.C. § 1981.

The substantive standards governing liability for § 1981 claims and Title VII disparate treatment claims are identical. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 669 (citing *North v. Madison Area Ass'n for Retarded Citizens*, 844 F.2d 401, 408 (7th Cir. 1988)). A plaintiff may pursue a claim of disparate treatment based on his race under either the direct or indirect method of proof. Regardless of the method he chooses, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). But the two methods differ in terms of the showing that is necessary to survive summary judgment.

Under the direct method, the plaintiff seeks to prove discrimination in the simplest way: he must produce either direct or circumstantial evidence that would permit a jury to infer that discriminatory intent motivated an adverse employment action taken against him. *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011) (citing *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2008). "The conventional distinction [between direct and circumstantial

evidence] is that direct evidence is testimony by a witness about a matter within his personal knowledge and so does not require drawing an inference from the evidence (his testimony) to the proposition that it is offered to establish, whereas circumstantial evidence does require drawing inferences." *Sylvester v. SOS Children's Vill. Ill., Inc.*, 453 F.3d 900, 903 (7th Cir. 2006) (citing 1 John H. Wigmore, Evidence § 25, at p. 953). There is no difference, in terms of probative value, between the two. *Id.* (citing *Anchor v. Riverside Golf Club*, 117 F.3d 339, 341 (7th Cir. 1997)). Case law attempts to list the types of circumstantial evidence the court should consider, *see, e.g.*, *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994) (suspicious timing, ambiguous oral or written statements, behavior towards other members of a protected group, tendency or statistical evidence, or contrasts with similarly situated employees), but these lists should not be read as exhaustive.[2] Rather, the court may and should consider *any* admissible evidence presented to it, whether direct or circumstantial, which tends to prove or disprove that the plaintiff's protected characteristic motivated the adverse employment action. Summary judgment must be denied if, taken together, that evidence is such that a reasonable jury could find that it did. *Anderson*, 477 U.S. at 248.

In contrast, under the indirect, burden-shifting method adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff need not immediately produce direct or circumstantial evidence which, without more, tends to prove discriminatory intent. Instead, the plaintiff begins by establishing the four elements of a prima facie case by a preponderance of the evidence. *Kirk v. Fed. Prop. Mgmt. Corp.*, 22 F.3d 135, 138 (7th Cir. 1994) (citing *Burdine*, 450 U.S. at 252); *Jayasinghe v. Bethlehem Steel Corp.*, 760 F.2d 132, 134 (7th Cir.

---

[2] Nor do cases like *Troupe*, which coined the familiar phrase "convincing mosaic of circumstantial evidence," create new standards of proof. *Sylvester*, 453 F.3d at 904.

1985). The terms of these elements vary according to the nature of the case and the discrimination alleged. Here, Vazquez would have to show:  (1) he is a member of a protected class; (2) his performance met Navistar's legitimate job expectations; (3) despite this performance, he was subjected to an adverse employment action; and (4) Navistar treated similarly situated employees outside the protected class more favorably. *See Eaton v. Ind. Dep't of Corr.*,657 F.3d 551, 554 (7th Cir. 2011) (citing *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir. 2007)). Each element may be shown by either direct or circumstantial evidence. *Desert Palace, Inc., v. Costa*, 539 U.S. 90, 91 (2003). It is not clear whether Vazquez wishes to proceed under the direct or indirect method in opposition to Navistar's motion for summary judgment. [DE 49 at 4-5]. But he has not carried his burden under either.

A.      **Vazquez has not made out a prima facie case for discriminatory termination under the direct method of proof.**

Under the direct method, Vazquez would have to show that a materially adverse employment action was taken against him, and that it was taken because of his race. A materially adverse employment action is more than "an inconvenience or a change in job responsibilities." *Ellis v. CCA of Tenn. LLC*, 650 F.3d 640,  649 (7th Cir. 2011) (quoting *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004)) (internal quotation marks omitted). Rather, to be actionable, an employment decision must have an impact on plaintiff's job "in a real and demonstrable way." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238–39 (11th Cir. 2001). Vazquez's termination definitely qualifies, and Navistar concedes as much. But Vazquez has introduced virtually no evidence that the decision to terminate him was motivated by a racially discriminatory animus. He points to three incidents which he believes support that connection: (1) his superiors sometimes asked him to translate Spanish

conversations when he was the only bilingual person present [DE 45-1 at 21]; (2) he was occasionally asked to do quality oversight work at Navistar plants in Mexico, because his superiors trusted him more than the on-site engineers [DE 45-1 at 21]; and (3) one of his supervisors, who played no part in Navistar's decision to terminate the plaintiff, frequently uttered racial slurs against Greeks, Italians, Hispanics, and Asians. [DE 45-1 at 21; DE 45-1 at 7].

No reasonable jury could find, based on the foregoing, that Navistar discharged Vazquez because he is Hispanic. Asking the only bilingual person present to translate a conversation is not evidence of discriminatory intent. And it has nothing to do with Vazquez's eventual termination. Sending the plaintiff, a quality control engineer, to monitor the quality of output at a Navistar plant in Mexico is not evidence of discriminatory intent. Frequent travel to monitor output quality at such plants was an integral part of the plaintiff's job description, by his own admission. And while the use of racial or ethnic slurs by Vazquez's supervisor – who was in no way involved with the termination decision –  was probably unpleasant, and clearly inappropriate behavior, it is not evidence that two unrelated higher-ups, who are not accused of making ethnic slurs, later terminated Vazquez because he is Hispanic.[3] To the extent that Vazquez has even *tried* to argue the direct method in response to Navistar's motion – and it is not clear that he has – the argument is insufficient to withstand summary judgment.

**B.    Vazquez has not made out a prima facie case for discriminatory termination under the indirect method of proof.**

---

[3] Furthermore, it is not actionable in itself. Ethnic slurs do not amount to unlawful employment discrimination unless the "quantity, frequency, and severity of the racial or ethnic slurs create a work environment so hostile as to discriminate against the minority employee[,]" and Vazquez has not argued a hostile work environment. *Vore v. Indiana Bell Tel. Co.*, 32 F.3D 1161, 1164 (7th Cir. 1994). He has not even suggested that the racial slurs were ever directed at him.

11

Turning to the indirect method of proof, Navistar appears to concede that Vazquez is a member of a protected class, that his termination amounted to an adverse employment action, and even that his performance (prior to the overpayment issue) met their legitimate job expectations. But Navistar argues that Vazquez has not identified similarly situated non-Hispanic employees who were treated more favorably than he was. Navistar is correct. "Employees are similarly situated if they are directly comparable in all material aspects." *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). This is a case-specific inquiry, and the relevant factors depend on the context. In disciplinary cases, for example, a plaintiff must show that he is "similarly situated with respect to performance, qualifications, and conduct." *Thompson v. John J. Madden Mental Health Ctr.*, 35 Fed. Appx. 413, 414 (7th Cir. 2002) (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000)). A plaintiff should ordinarily show "that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue*, 219 F.3d at 617-18 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

In an effort to show that similarly situated non-Hispanic employees were treated more favorably, Vazquez's response brief asserts that he was the only Hispanic Level 5 Quality Engineer and that his job assignments were "three times that of the other non-Hispanic Level 5 Quality Engineers." [DE 49 at 4]. The evidence, viewed in the light most favorable to the plaintiff, does show that he sometimes was responsible for quality control over as many as 60 suppliers, while the other Quality Engineers were only responsible for 22 to 26. [DE 45-1 at 21-22]. But Vazquez himself attributes the difference to him being better at his job than they were; he was given more

12

responsibility because he could handle more responsibility. [DE 45-1 at 22]. Thus, by Vazquez's admission, he was not similarly situated to the other Quality Engineers in terms of performance.

More importantly, this case is not about discrimination in the distribution of labor. It is about an allegedly discriminatory discharge. The really relevant inquiry, in disciplinary discharge cases like this one, is whether anybody similarly situated to the plaintiff *in terms of the conduct that precipitated the discharge*, was treated more favorably. It is undisputed that Vazquez improperly entered, and was overpaid for, 2,237.0 hours of labor between January 1, 2008, and October 31, 2008. [DE 51 at 1]. To satisfy his burden, Vazquez must show that a similarly situated non-Hispanic "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them[,]" and was *not* terminated. *See Radue*, 219 F.3d at 617-18.

Accordingly, Vazquez argues that he was not the only Level 5 Quality Engineer who was overpaid using the 2-4-7 code, but he *was* the only Hispanic one and the only one who was terminated. [DE 49 at 5]. But the undisputed evidence tells a slightly different story. Four other Level 5 Quality Engineers – one of whom, like Vazquez, was Hispanic – did use the 2-4-7 code during 2008, but in the following amounts: 59.0 hours; 162.0 hours; 142.0 hours; and 21.5 hours. [DE 51]. The difference between those numbers and the number of hours Vazquez coded in – 2,237.0 – is a significant mitigating factor that distinguishes their conduct. [DE 51]. *See, e.g., Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (holding that both "the quantity and the quality of the comparator's misconduct" must be similar, and that a plaintiff who committed four violations was not similarly situated to a comparator who committed one). Vazquez's level of misconduct – and, accordingly, the harm to the company that his misconduct caused – was  orders

of magnitude greater than that of any of his proposed comparators. It would not be out of the ordinary for those employees to be punished less severely than he was. Furthermore, it is Vazquez's burden to show that he was similarly situated to these other employees, and he has presented no evidence that they, like him, refused to pay back the difference between the money they received and the compensation to which they were actually entitled. The only evidence submitted on that point shows that at least one of them – Romano Floreani – actually *did*. [DE 49-5].

In short, while it is true that other employees were overpaid to some extent using the 2-4-7 code, Vazquez has not carried his burden of showing he was similarly situated to these much less egregiously offending employees in all material aspects. As a result, he is unable to make a prima facie case for racial discrimination under the indirect method.

     **C.**     **Even if Vazquez could make a prima facia case for racially discriminatory termination, Navistar is entitled to summary judgment because Vazquez cannot show that their proffered reason for terminating him is a pretext.**

Once the plaintiff lays out a prima facie case, the burden shifts to the employer to offer a non-discriminatory reason for the adverse employment action. *Everroad v. Scott Truck Systems, Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). The employer's burden at this stage is one of "production, not persuasion." *Reeves*, 530 U.S. at 142. If the employer meets its burden, the burden shifts back to the plaintiff to submit evidence demonstrating that the employer's explanation is a pretext. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). Pretext is not established when the plaintiff merely demonstrates the employer's reason was mistaken. *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 696 (7th Cir. 2006) (citations omitted). "An employer's mistaken belief that the plaintiff's conduct merited termination is not unlawful, so long as the belief was honestly held." *Id.* (citing

14

*Wade v. Lerner N.Y. Inc.*, 243 F.3d 319, 323 (7th Cir. 2001)). A pretext is a deliberate falsehood; a lie, and not an oddity or error. *Id*.

Navistar met its burden of production. It claims it terminated Vazquez because he unlawfully retained approximately $48,000 of company money over the first several months of 2008. To avoid summary judgment, Vazquez must raise evidence sufficient that a reasonable jury could conclude Navistar's stated reason for discharge is a lie. But Vazquez admits he was overpaid, and he admits it was in an amount of at least $20,000 to $22,000. He also admits he never told anyone about it until Navistar discovered the problem independently. Yet he still claims that Navistar discharged him because he is Hispanic, and not because he took over $20,000 from the company to which he was not entitled. The only evidence of pretext Vazquez identifies are the same bits and pieces previously discussed: the "equal-opportunity" racial slurs uttered by his supervisor, which may never have been directed at Vazquez; the uneven work distribution; the fact that other employees improperly used the 2-4-7 code and were not terminated; and the fact that he was required to work over the holidays in 2005. But none of these pieces of evidence, even viewed in the light most favorable to the plaintiff, show that the decision-making personnel within Navistar actually believed they were firing Vazquez on November 18, 2008, because he is Hispanic, and not because they genuinely believed he misappropriated over $20,000 from their company. Vazquez has not produced sufficient evidence to convince a reasonable jury that Navistar's stated reason for termination is a lie.

D.    **Beyond his termination, none of the various instances of discrimination alleged by Vazquez are actionable**.

Vazquez did not develop any claim of employment discrimination aside from his termination, but he would be unsuccessful if he tried. To be actionable, an employment decision

must have negatively impacted a plaintiff's job "in a real and demonstrable way." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238–39 (11th Cir. 2001). Employment discrimination laws are "not intended to reach every bigoted act or gesture that a worker might encounter in the workplace." *Hunt v. City of Markham, Ill.*, 219 F.3d 649, 653-54 (7th Cir. 2000) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Savino v. C.P. Hall Co.*, 199 F.3d 925, 933 (7th Cir.1999); *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir.1996)). Occasionally asking Vazquez to translate because he was the only bilingual person present; assigning Vazquez to do quality control at a plant in Mexico when his job was to travel around and do quality control at various plants; these things are not actionable. Nor are the slurs his supervisor sometimes uttered. Racial slurs, while unpleasant, and highly inappropriate, are not actionable unless the "quantity, frequency, and severity of the racial or ethnic slurs create a work environment so hostile as to discriminate against the minority employee." *Vore*, 32 F.3d at 1164. Vazquez has not even alleged a hostile work environment. In short, only Vazquez's termination is potentially actionable under 42 U.S.C. § 1981, and he has failed to make a prima facie case that it was motivated by a racially discriminatory animus. Summary judgment must be **GRANTED** against Vazquez's § 1981 race discrimination claims.

### III.   Vazquez Has Failed to Carry His Burden with Respect to His Claims of Retaliation Under 42 U.S.C. § 1981.

As was the case with Vazquez's discrimination claim, the same prima facie requirements apply to a retaliation claim under 42 U.S.C. § 1981 as would apply to a retaliation claim under Title VII. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387 (7th Cir. 2007). Those requirements are

16

essentially the same as the requirements for a discrimination claim. For example, under the direct method of proof, a retaliation plaintiff must show that he engaged in a protected activity – typically, complaining of unlawful discrimination – and that his employer took an adverse employment action against him because of his engaging in that protected activity. *See Metzger v. Ill. State Police,* 519 F.3d 677, 681 (7th Cir. 2008) (citing *Dorsey v. Morgan Stanley,* 507 F.3d 624, 627 (7th Cir.2007)); *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 758 (7th Cir. 2006). The parties agree that, in 2005, Vazquez complained internally about what he perceived to be discrimination. But Vazquez has not produced sufficient evidence for a reasonable jury to find that he was terminated on November 18, 2008, *because* he complained about discrimination in 2005. To the contrary, Vazquez has presented *no* evidence of such a causal link. The undisputed facts show a three-year gap between the protected activity and his termination. That is not temporal proximity, and even if it was, "mere temporal proximity," without additional evidence, is not enough to withstand summary judgment under the direct method of proof. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 981 (7th Cir. 2004) ("it is clear that 'mere temporal proximity' is not enough to establish a genuine issue of material fact."). Furthermore, Vazquez admits that Navistar took immediate action upon receiving his complaint in 2005; it quickly removed the supervisor who was the source of his concern.

Of course, Vazquez could also proceed on his retaliation claim under the indirect method of proof. Under the indirect method, a retaliation plaintiff must make the same four-part showing as he would in a discrimination case, except that he must demonstrate that he engaged in a protected act instead of showing that he is a member of a protected class. *See Silverman v. Bd. of Educ. of City of Chi.*, 637 F.3d 729, 742 (7th Cir. 2011). For the same reasons that Vazquez's discrimination claim fails under the indirect method – a failure to show that similarly situated employees were treated

more favorably, and a failure to show that Navistar's stated reason for his discharge was a lie – Vazquez's claim cannot go forward. Summary judgment must be **GRANTED** against Vazquez's retaliation claims under § 1981.

## IV.    Navistar Is Entitled to Summary Judgment on Vazquez's Fair Labor Standards Act Claims.

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (citing 29 U.S.C. § 202(a)). Inter alia, the FLSA requires employers to pay a statutorily-defined minimum wage, *see* 29 U.S.C. § 206(a)(1), and overtime for any hours worked in excess of 40 hours per week, *see* 29 U.S.C. § 207(a)(1). But those minimum wage and overtime requirements do not apply to "exempt" employees, such as "any employee employed in a bona fide. . . administrative. . . capacity[.]" 29 U.S.C. § 213(a)(1).

The Secretary of Labor has defined the term "employee employed in a bona fide administrative capacity" as any employee:

> "(1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities;
>
> "(2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> "(3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

29 C.F.R. § 541.200(a)(1)-(3). It is undisputed that Vazquez was compensated on a salary basis at significantly more than $455 per week, and it is undisputed that his primary duties included the exercise of discretion and independent judgment with respect to approximately 60 Navistar supplier contracts, many of which represented multi-million dollar investments. The only remaining question is whether Vazquez's primary duty was the performance of office or non-manual work directly related to the management or general business operations of Navistar or Navistar's customers. According to the Secretary of Labor, "[w]ork directly related to management or general business operations includes. . . quality control[.]" 29 C.F.R. § 541.201(b). It is undisputed that Vazquez's "primary duty" was non-manual quality control. Therefore it is undisputed that Vazquez meets all three requirements of an exempt employee. Any claim by the plaintiff under the minimum wage *or* overtime provisions of the FLSA fails as a matter of law.

Vazquez's only remaining FLSA argument is his contention that he is entitled to the reimbursement of travel expenses which he incurred in Navistar's employ and which were never paid back. But the FLSA does not require the reimbursement of travel expenses. The FLSA requires a minimum wage, and that overtime be paid at 1.5 times an employee's "regular rate," a figure which does not include reimbursements. *See* 29 U.S.C. § 207(e)(2) ("reasonable payments for traveling expenses" are not included in the FLSA's definition of an employee's "regular rate" of compensation); 29 C.F.R. § 778.217(b)(3) (excluding "amount expended by an employee, who is traveling 'over the road' on his employer's business" from regular rate). In short, travel reimbursements are "not compensation for services rendered by the employees during any hours

worked in the workweek[,]" and thus not covered by the FLSA.[4] 29 C.F.R. § 778.217(a). Even if they were, Vazquez is exempt from its wage and overtime requirements. Summary judgment must be **GRANTED** against Vazquez's FLSA claims.

**V.     Vazquez's Indiana Law Claim is Procedurally Improper and Must Be Dismissed.**

        In his amended complaint, Vazquez pleaded a claim for unpaid wages under the Indiana Code's Wage Payment Statute, I.C. § 22-2-5-1 *et seq.* [DE 19 at 9]. This is legally incorrect. "[T]he Wage *Payment* Statute references current employees and those who have voluntarily left employment, either permanently or temporarily." *St. Vincent Hosp. and Health Care Center, Inc. v. Steele*, 766 N.E.2d 699, 705 (Ind. 2002) (emphasis added) (citing I.C. § 22-2-5-1(b)). In contrast, "[t]he Wage *Claims* Statute references employees who have been separated from work by their employer and employees whose work has been suspended as a result of an industrial dispute." *Id.* (emphasis added) (citing I.C. § 22-2-9-2-(a)-(b)). Furthermore, "an employee's status *at the time he or she files the claim* is the relevant inquiry in determining whether to proceed under the Wage Payment Statute or the Wage Claims Statute." *Hollis v. Defender Sec. Co.*, 941 N.E.2d 536, 540 (Ind. Ct. App. 2011) (emphasis added). Vazquez had been terminated by Navistar at the time he filed this lawsuit. Therefore, his Indiana claim must be under the Wage Claims Statute, and not the Wage Payment Statute.

---

        [4] The only exception applies when a failure to reimburse an employee for travel expenses would effectively push the employee's compensation below the minimum wage. *See, e.g., Arriaga v. Florida Pacific Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002); *De Luna-Guerrero v. North Carolina Growers' Ass'n, Inc.*, 338 F.Supp.2d 649, 663 (E.D.N.C. 2004) ("The Fair Labor Standards Act (FLSA) prohibits the employer from taking deductions from a worker's pay or otherwise driving the worker's wages below the FLSA minimum wage by imposing on the work an expense which is primarily for the benefit of the employer."). But that is not a separate requirement; it is born out of the minimum wage mandate. Vazquez has not alleged that his unreimbursed travel expenses pushed his salary below minimum wage, and he would need to present some significant documentation if he did do so, given that his salary was $1,297.06 per week.

That presents a problem for Vazquez. "Claimants who proceed under [the Wage Claims Act] may not file a complaint with the trial court." *Lemon v. Wishard Health Servs.*, 902 N.E.2d 297, 300 (Ind. Ct. App. 2009), *transf. denied*, 919 N.E.2d 551 (Ind. 2009) (citing *Steele*, 766 N.E.2d at 705). "It is evident that the Wage Claims Act contemplates that a claimant must approach the DOL before he or she is entitled to file a lawsuit in court to seek unpaid wages or penalties. The DOL is then entitled to investigate the claim and refer the claim to the Attorney General, who may either institute an action on the claimant's behalf or refer the claim to an attorney." *Id.* at 300-301. In short, a claimant seeking redress pursuant to the Wage Claims Act *must* first submit the claim to the DOL before filing a lawsuit in court. *Id.*; *see also Naugle v. Beech Grove City Schs.*, 864 N.E.2d 1058, 1061 (Ind. 2007) (holding that "the Wage Claims Statute requires that a wage claim be submitted to the [DOL] for administrative enforcement" and holding that, "[b]ecause no administrative proceedings have been pursued, the plaintiffs' contentions under the Wage Claims Act are not before us"). Instead of submitting his claims to the Indiana DOL, as required by the Wage Claims Statute, Vazquez improperly filed a complaint based on the Wage Payment Statute. *Hollis*, 941 N.E.2d at 540. Because Vazquez did not allege any Wage Claims Statute violations and submit his claims to the Indiana DOL, his claim under Indiana law must be **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction. *Id.*

## VI.   The Court Declines to Exercise Supplemental Jurisdiction Over Navistar's Counterclaim.

In addition to moving for summary judgment against all of the plaintiff's claims, Navistar moved affirmatively for summary judgment on its own counterclaim in quantum meruit. Vazquez completely failed to respond. However, "a nonmovant's failure to respond to a summary judgment

motion. . . does not, of course, automatically result in judgment for the movant." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (internal citations omitted). Navistar must still demonstrate that it is entitled to judgment as a matter of law. *Id*. Navistar's argument is, essentially, that the parties agree Vazquez was overpaid, or double-paid, to the tune of at least $20,000 to $22,000 during the months leading up to his termination. Navistar believes that to allow Vazquez to retain that sum would be unjust, so the court should enter judgment in their favor as to the question of Vazquez's liability, if not the amount of damages.

Quantum meruit, or the doctrine of unjust enrichment, is not the ordinary vehicle for recovery of wages mistakenly overpaid to an employee. Under the Indiana Code, "[i]f an employer has overpaid an employee, the employer may deduct from the wages of the employee the amount of the overpayment[,]" provided the employer gives the employee two weeks' notice and the amount of the overpayment is not in dispute. *See* I.C. § 22-2-6-4. But Navistar no longer has access to that remedy, because Vazquez is no longer on the payroll. Since I.C. § 22-2-6-4 does not apply, there is no statutory framework for a claim like Navistar's. A claim under the common law doctrine of quantum meruit contains three elements: (1) a benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment. *Woodruff v. Indiana Family and Social Services Admin.*, ___ N.E.2d ___, 2012 WL 928126 (Ind. March 20, 2012). It seems that the elements are met: Navistar undisputedly conferred a monetary benefit on Vazquez at his prompting (through his use of the 2-4-7 code); allowing Vazquez to retain over $20,000 in overpayments would be unjust; and Navistar certainly expected Vazquez to perform a certain amount of work in exchange for those payments.

But there are some complications. Under Indiana law, the hourly or salaried wages of an employee are characterized as "present compensation." *Williams v. Riverside Cmty. Corr. Corp.*, 846 N.E.2d 738, 743-744 (Ind. Ct. App. 2006). "The defining characteristic of present compensation, at least with regard to an employee's hourly or salaried wage, is that it wholly and indefeasibly vests upon the performance of labor without any additional requirements[.]" *Id.* at 744. "Further, because present compensation indefeasibly vests upon the performance of labor, it can *never* be forfeited by an employee absent a contractual agreement to the contrary." *Id.* (emphasis added) (citing *Haxton v. McClure Oil Corp.*, 697 N.E.2d 1277, 1281 (Ind. Ct. App. 1998)). To the extent that this rule intersects with the doctrine of quantum meruit, it precludes an employer from retroactively reducing an employee's salary or "revaluing" work already performed. *See Gagan v. United Consumers Club, Inc.*, 2012 WL 729943 at *8-9 (N.D.Ind. March 6, 2012). On the other hand, the *Williams* rule does not preclude an employer from recovering wages from an employee who never performed the labor for which he was paid at all, or who was actually working for another employer at the time. *See SJS Refractory Co., LLC v. Empire Refractory Sales, Inc.*, 952 N.E.2d 758 (Ind. Ct. App. 2011). Deciding into which category this case fits would require a close and extensive look at the nature of the overpayments. Being paid more than you are supposed to be paid for your services, while certainly a valid basis for disciplinary action when one does not report it, is not necessarily the same thing as being paid to perform services but not performing those services at all. The court is not equipped, on the current record, to decide which is the more apt description of what occurred in this case.

More importantly, this issue is a novel and complex one, grounded entirely in Indiana state law, and all of the federal claims over which this court had original jurisdiction have been resolved.

According to § 1367(c), a district court may decline to exercise supplemental jurisdiction over a state law claim if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). "When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)." *Hansen v. Bd. of Tr. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) (internal citations omitted). The court had no qualms about ruling on the plaintiff's Indiana Wage Claims Statute claim because the outcome was abundantly clear. *See Khan v. State Oil Co.*, 93 F.3d 1358, 1366 (7th Cir. 1996) (noting that if the correct disposition of the supplemental claims is clear, considerations of economy favor retaining jurisdiction). But at this point, to retain jurisdiction over – and to decide on summary judgment – Navistar's quantum meruit counterclaim would effectively be to preside over a new lawsuit with Navistar as plaintiff and Vazquez as defendant, with no federal "hook" and with a complex issue of Indiana common law at the heart of the case. Under these circumstances, the court **DECLINES** to exercise its supplemental jurisdiction. Navistar's quantum meruit counterclaim is **DISMISSED WITHOUT PREJUDICE**, and Navistar is free to pursue it in state court.

24

**VII.    Vazquez's Motion for Summary Judgment is Denied.**

Vazquez cross-moved for summary judgment on the FLSA and Indiana Wage Claims Statute issues. In light of the court's disposition of Navistar's motion for summary judgment, Vazquez's motion is **DENIED**.

## CONCLUSIONS

For the reasons stated herein, Navistar's motion for summary judgment [DE 44] is granted in part and denied in part. Summary judgment is **GRANTED** against the plaintiff's claims of discrimination, and against the plaintiff's claim under the Indiana Wage Claims Statute to the extent that it is **DISMISSED WITHOUT PREJUDICE**. Summary judgment is **DENIED** as to Navistar's counterclaim, and the counterclaim is **DISMISSED WITHOUT PREJUDICE** for the reasons stated herein. In light of the foregoing, Vazquez's motion for summary judgment [DE 52] is **DENIED**.

SO ORDERED.

ENTERED:    March 30, 2012

_____/s/ JON E. DEGUILIO_____
Judge
United States District Court

25